# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 20-739V
(to be published)

|  |  |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * *<br>JEFFREY BELLO *and* OKSANA Y.     *<br>OGANESOV*, parents of C.J.B., a minor,*   *<br>                               *<br>           Petitioners,     *<br>     v.                             *<br>                               *<br>SECRETARY OF HEALTH      *<br>AND HUMAN SERVICES,      *<br>                               *<br>           Respondent.     *<br>                               *<br>* * * * * * * * * * * * * * * * * * * * * * * * | Chief Special Master Corcoran<br><br><br>Filed: June 1, 2022 |

*Phyllis Widman,* Widman Law Firm LLC, Northfield, NJ, for Petitioners.

*Benjamin Warder,* U.S. Dep't of Justice, Washington, DC, for Respondent.

## **DECISION GRANTING ATTORNEY'S FEES AND COSTS**[1]

On June 22, 2020, Jeffrey Bello and Oksana Y. Oganesov filed a petition for compensation under the National Vaccine and Injury Compensation Program (the "Vaccine Program").[2] (ECF No. 1) ("Petition"). Petitioners alleged that their child, C.J.B., developed encephalopathy, speech abnormality, language regression, and/or significant aggravation of an underlying condition, including but not limited to a genetic mutation, as a result of a series of vaccinations he received on June 23, 2017, when he was approximately 15 months old. Pet. at 1.

---

[1] Because this Decision contains a reasoned explanation for my actions in this case, it must be posted on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to Section 300aa of the Act (but will omit the statutory prefix).

I ordered Petitioners to Show Cause why the claim should not be dismissed, and subsequently did dismiss the claim due to Petitioners' inability to establish that C.J.B. had in fact suffered an encephalopathy. *Bello v. Sec'y of Health & Hum. Servs.,* No. 20-739V, 2021 WL 5070179 (Fed. Cl. Spec. Mstr. Sept. 10, 2021) (the "Decision"). Petitioners thereafter filed a Motion for Review, but it was denied. *Bello v. Sec'y of Health & Hum. Servs.*, 158 Fed. Cl. 734 (2022).

Petitioners have now filed a motion for a final award of attorney's fees and costs. Motion, dated Apr. 22, 2022 (ECF No. 64) ("Final Fees Mot.").[3] Petitioners request $33,813.19 ($32,792.50 in fees, plus $329.54 in costs to Petitioners' attorney, and $691.15 to Petitioners themselves), based on all work performed on the matter by Ms. Phyllis Widman. ECF No. 64-1. Respondent reacted to the final fees request on May 6, 2022. Response, dated May 6, 2022 (ECF No. 67) ("Response"). Respondent denies that Petitioners have established that the claim possessed sufficient objective support to establish its reasonable basis, noting that obvious weaknesses in the claim were observed throughout its life. *Id.* at 9. Petitioners filed a reply defending the claim's reasonable basis. Reply, dated May 13, 2022 (ECF No. 69) ("Reply").

For the reasons set forth below, I hereby **GRANT** Petitioners' motion, awarding fees and costs in the total amount of **$33,813.19** reflecting $32,792.50 in attorney's fees and $329.54 in costs, along with $691.15 in costs to Petitioners.

## ANALYSIS

**I.     Petitioners' Claim had Reasonable Basis**

Although the Vaccine Act only guarantees a reasonable award of attorney's fees and costs to *successful* petitioners, a special master *may* also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, reasonable basis is only a threshold requirement in unsuccessful cases—its establishment does not *obligate* a special master to award fees, and the calculation of the sum to be awarded is otherwise subject to the same reasonableness standards governing all fees determinations.

---

[3] At the time the present fee application was filed, existing counsel had indicated that Petitioners were going to proceed with additional appeals, and counsel moved to withdraw from further representing them. Motion, dated Apr. 22, 2022 (ECF No. 65). However, it appears that Petitioners did not opt to appeal to the Federal Circuit the denial of their Motion for Review, and therefore the motion to withdraw is MOOTED (and denied for that reason), since the case is concluded.

2

A claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This inquiry is focused on the *claim* itself—counsel's conduct in prosecuting the claim is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. Reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what was learned about the evidentiary support for the claim as the matter progressed. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation). Thus, a claim can "lose" reasonable basis over time, as evidence about the claim is adduced.

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[4]

Petitioners defend the claim's reasonable basis by relying on their affidavits and the medical records. *See* Reply at 2. In particular, they reference records associated with Dr. Stephen Falchek's treatment of C.J.B. in 2019–20, his apparent encephalopathy diagnosis for C.J.B., and the timeline of events in affidavits that they believe support the conclusion that the vaccines C.J.B. received caused his developmental injury. *Id.*; Decision, 2021 WL 5070179, at *15. Respondent maintains, by contrast, that no compensable injury was established, and that the claim otherwise relies on the Petitioners' *assertions* that the injury was caused by the vaccination, rather than evidence from the medical records. Response at 9–10.

As my underlying Decision indicates, I did not find adequate support from the medical records to establish an encephalopathy occurred within the months following C.J.B.'s vaccination—and therefore my initial sense (based on my experience as a special master handling

---

[4] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

3

these kinds of claims) that causation could likely not be demonstrated was borne out after careful consideration of the overall record. Decision, 2021 WL 5070179, at *13–14. However, records from Dr. Falchek's treatment did set forth his impression that C.J.B. suffered from complex encephalopathy. *Id.* at *4. The fact that Dr. Falcheck saw C.J.B. over two years after he was vaccinated, and relied largely on what he was told by C.J.B.'s parents, provided fair bases for not giving this opinion significant weight. But it *was* a treater opinion contained in the record, and therefore entitled to serious consideration in deciding the case. Indeed, although the Court of Federal Claims ultimately sustained my Decision on appeal, it scrutinized the significance of the records associated with Dr. Falchek's opinion. *Bello*, 158 Fed. Cl. at 747. The Court even held oral argument in the matter, further underscoring the fact that others deemed the claim to (at least facially) have potential merit, especially in light of my disposition of it.

Given the above (and despite the fact that my prediction about the claim's likely fate proved correct), I find that the required scintilla of objective proof in support of the claim exists sufficient to meet the admittedly-lenient reasonable basis standard. And I otherwise see no other reason to deny a fee award—although I make one final admonition to counsel. In future cases in which I explain, at a case's outset, my misgivings about a claim involving the alleged injury of developmental regression based on a lack of support in the immediate, post-vaccination record, the subsequent inability to substantiate the claim (or refusal to dismiss voluntarily based on my warning) will risk a reduction in fees, or their total denial, depending on the claim's facts. Counsel must take care in what cases are advanced in the Program, and be mindful of how similarly-situated claims have been received. I will act more punitively in my fee determinations if additional cases like this one are interposed—since counsel is now well-educated about the kinds of proof that must be offered when this sort of injury is alleged.

## II.     Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method— "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot.*

4

*Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioners request the following rates for her attorneys and support staff, based on the years work was performed:

| **Attorney** | **2020** | **2021** | **2022** |
|---|---|---|---|
| **Ms. Phyllis Widman** | $375.00 | $375.00 | $400.00 |

ECF No. 64-1.

Ms. Widman practice in Northfield, New Jersey—a jurisdiction that has been deemed "in forum." Accordingly, she is entitled to the rates established in *McCulloch*. *See Maxwell v. Sec'y of Health & Hum. Servs.*, No. 16-827V, 2018 WL 5095119, at *2 (Fed. Cl. Spec. Mstr. Sept. 17, 2018). The rates requested for Petitioners' attorney are also consistent with what has previously been awarded for her time, in accordance with the Office of Special Masters' fee schedule and previous interim fees decision in this case as well.[5] *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2022 WL 1077311 at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2022) (awarding Ms. Widman's rate for 2020 and 2021 at $375.00). The rate requested for 2022 has not been granted before, but fits within the fees schedule. I also deem the time devoted to this matter over the course of nearly five years to be reasonable, especially since it incorporates an appeal. The requested attorney and paralegal time will be awarded.

### III. Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

---

[5] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited May 16, 2022).


Petitioners seek $1,020.69 in costs—split with $329.54 for Petitioners' attorney and $691.15 directly to Petitioners. Litigation costs appear to reflect the gathering of medical records. Final Fees Mot. at 3; ECF No. 64-2. Petitioners' personal costs are for medical records and the filing fee. Final Fees Mot. at 3; ECF No. 64-3. These are all costs commonly awarded as reasonable, and I find no other grounds for denying them under the circumstances.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I hereby **GRANT** Petitioners' fees motion, awarding fees and costs in the total amount of **$33,813.19** ($32,792.50 in attorney's fees, $329.54 in costs, and $691.15 in individual costs) to Petitioners, in the form of two checks: one in the amount of $33,122.04 made payable jointly to Petitioners and their attorney, Ms. Phyllis Widman, and the second in the amount of $691.15 for Petitioners themselves.

Otherwise, I **DENY** the Motion to Withdraw as Moot.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[6]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.